Decided July 27, 1896.

## CROW *v.* CROW.
### [45 Pac. 761.]

DIVORCE — PERSONAL INDIGNITIES — CODE, § 495.—Under section 495, Hill's Code, making "personal indignities rendering life burdensome" ground for divorce, proof that a woman shown by the evidence to have been virtuous, and to have been a good and dutiful wife, was charged by her husband, in the presence of others, with having committed adultery, is sufficient to entitle her to a divorce as a matter of law, without special proof of the degree or kind of burdensomeness to her life thereby caused: *Smith* v. *Smith*, 8 Or. 100; *McMahan* v. *McMahan*, 9 Or. 525; *Eggerth* v. *Eggerth*, 15 Or. 626; and, *Herberger* v. *Herberger*, 16 Or. 327, approved and followed.

From Linn: GEORGE H. BURNETT, Judge.

This is a suit for divorce, brought by the wife on the ground of personal indignities rendering her life burdensome. The issues being joined, the prosecuting attorney, upon the failure of the defendant, appeared for the state, whereupon the plaintiff introduced her evidence, from which the court found all the material facts in her favor, except that she offered no testimony tending to show that her life had been or was rendered burdensome by any conduct of the defendant, and dismissed the suit, from which decree the plaintiff appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. N. M. Newport.*

No appearance for respondent.

PER CURIAM. The only question presented for consideration is whether the evidence is sufficient to justify a more favorable finding than that of which

the plaintiff complains. The record conclusively shows that the defendant, in the presence and hearing of another, falsely charged the plaintiff with the commission of the crime of adultery with a person whom he named, and, upon her denial of the accusation, called her a liar and other opprobrious names and epithets, telling her she was not a reputable person, and ought to live in a house of ill fame, where she could be among her equals. Thereupon she informed the defendant that she could not live with any one who would falsely accuse her of the commission of such a crime, and immediately deserted him. The plaintiff, as a witness in her own behalf, testifies that these accusations were false, and made for the purpose of vexing and annoying her, and that they did annoy her very much, and on cross-examination says they made her miserable. The evidence does not show the degree or extent of the misery suffered by the plaintiff as a result of the defendant's malicious and false charge, but this may be inferred from her conduct and the other facts and circumstances of the case. It has been repeatedly held in this state that if either party to the marriage contract falsely charge the other with the commission of the crime of adultery, such false accusation is a sufficient cause for a divorce: *Smith* v. *Smith*, 8 Or. 100; *McMahan* v. *McMahan*, 9 Or. 525; *Eggerth* v. *Eggerth*, 15 Or. 626 (16 Pac. 650); *Herberger* v. *Herberger*, 16 Or. 327 (14 Pac. 70). The statute authorizes a dissolution of the marriage contract at the suit of the injured party on the ground, *inter alia*, of cruel and inhuman treatment or per-

29 OR.— 26.

sonal indignities rendering life burdensome: Hill's Code, § 495.  It is possible that the false charge of the commission of the crime of adultery against a woman may not be such a personal indignity as to render her life burdensome, but in conceding that such an accusation can be made in the presence and hearing of others without producing this result, it must be predicated on the assumption either that the party so accused does not possess sufficient intelligence to comprehend the nature of the charge, or that her conduct indicates a want of moral character, if not a lack of virtue.

The evidence shows that the plaintiff was virtuous, and the court found that during her married life she had always behaved toward the defendant as a good and dutiful wife should in all respects. This finding rebuts any inference of a want of moral character or lack of virtue, and this being so, the false accusation, as a conclusion of law, must necessarily have cast a shadow over her life rendering it burdensome.  To charge a woman, in the presence and hearing of others, with the commission of the crime of adultery, is to render her subject to the gross insults of lustful men who may hear and believe the rumor, which, whether true or false, tends to rob her of her good name, alienate her friends and acquaintances, and deprive her of their society and companionship.  Every woman of ordinary intelligence understands the force and effect of such accusations, even when falsely made by her enemies, and in consequence thereof her life must necessarily be rendered burdensome, but how much greater

must be the degree of misery suffered by her when such a charge is falsely made by one who has solemnly promised to love, cherish, and protect her. It must be presumed that the plaintiff was sane, and therefore understood the nature and effect of the accusation made against her, and, being virtuous, it follows, as a conclusion of law, that her life was rendered burdensome in consequence of the defendant's conduct. The decree is reversed, and one will be entered here dissolving the marriage contract existing between the parties.   REVERSED.

Decided at PENDLETON, July 18, 1896.