OLSEN v. OLSEN.

(Second Division. Nome. January 15, 1916.)

No. 2561.

DIVORCE ☞27(8)—CRUEL AND INHUMAN TREATMENT—FALSE CHARGE
OF ADULTERY.

A false charge of adultery, made by the husband against the
wife, which was not sustained by any testimony, taken in con-
nection with other false charges made by the husband against the
wife, and proof of general ill treatment, are sufficient grounds for
the court to grant the wife a divorce on her cross-complaint.

This is an action by Edward Olsen against Sarah Olsen for
absolute divorce, the plaintiff alleging cruel and inhuman treat-
ment and adultery as the causes therefor. At the inception
of the action, the plaintiff applied for temporary alimony and
suit money and a restraining order against the use of certain
moneys on deposit to the credit of the defendant in the Nome
banks, claiming that such deposit was partly owned by him,
and that he would in any event be entitled to it, or a portion
thereof, as permanent alimony. The court refused the applica-
tion for temporary alimony and suit money because of section
1303 of the Code, which allows the same to the wife only,
but granted the restraining order until the final hearing and
decision of the case, as by section 1304 permanent alimony
may, in the discretion of the court, be allowed to either the
husband or wife, and also to hear proof as to the owner-
ship of the bank deposits.

Hugh O'Neill, of Nome, for plaintiff.
O. D. Cochran, of Nome, for defendant.

TUCKER, District Judge. Respecting the plaintiff's claim
that the bank funds or deposits are a portion of his earn-
ings, no case is furnished the court wherein it is held that
that question may be adjudicated in a divorce proceeding, and
the court is of opinion that it cannot be done; but, however
that may be, the evidence to sustain the plaintiff's claim is in
this respect wholly inadequate, even though such claim had

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

been asserted in an action of debt. The plaintiff testifies he gave the defendant moneys for deposit, but the defendant denies that she ever received any money from the plaintiff for this or any other purpose, and the entire evidence shows that, while the defendant for a number of years has been an industrious, money-making, and frugal woman, the plaintiff has been just the reverse, providing little, if any, funds for the maintenance and support of their joint living, which is legally and morally expected of the husband.

The plaintiff in his complaint alleges numerous instances of cruel and inhuman treatment by the defendant, none of which are sustained by a preponderance of evidence; but the denial of them by defendant is supported, not only by her specific denial, but by all the circumstances of the case and the manner and demeanor of the defendant when testifying. There is absolutely no evidence, apart from the plaintiff's, to sustain these allegations, while the negation of them by the defendant is reasonably corroborated and vouched for by her demeanor as a witness and by all the probabilities and circumstances connected with the marital relations of the parties. The evidence reasonably shows that the defendant for all the years of her married life has been a fond and foolish woman, contributing much more than her share to the support of the plaintiff, and in some respects indulgent to him. One of the allegations of the complaint is that the defendant paid assiduous attentions to one Mike Bronzich, and that said Bronzich visited the defendant at the home December 4, 1915, shortly prior to the institution of this action, in the absence of the plaintiff. Without discussing in detail the evidence with respect to this allegation, it was proven beyond a reasonable doubt the plaintiff was present at that time and left defendant and Bronzich there together. These allegations and others as to cruel and inhuman treatment are followed by the direct and positive allegation of adulterous relations between the defendant and Mike Bronzich, but the evidence is wholly inadequate to sustain it. While there is some evidence tending to show pleasant relations between defendant and Bronzich, there is none of indecent intimacy between them. His visits to the Olsen home were for the purpose of taking or getting away his laundry, and there is no evidence to show that at any par-

ticular time or times he went there for an adulterous purpose, or that he had a reasonable opportunity to commit the adulterous act. For these reasons, the application or action for divorce upon the allegations of the complaint is refused.

The court is of opinion, however, that the defendant is entitled to a divorce from the plaintiff upon her separate answer and cross-complaint. The cross-complaint alleges cruel and inhuman treatment by the plaintiff, in that he charges the defendant with adultery in his (the plaintiff's) complaint, and for other misconduct, etc.

I cannot find any authority for the proposition that the mere filing of a complaint upon the ground of supposed adultery is of itself sufficient ground to support a cross-complaint of the wife, praying to be divorced from the husband upon the ground that she has been subjected to outrage, although he fails to establish his charge, and the contrary view is expressed in Simons v. Simons, 13 Tex. 468. Still there are authorities leaning strongly that way. See Smith v. Smith, 8 Or. 100–102; Crow v. Crow, 29 Or. 392, 45 Pac. 761, and cases; Mathewson v. Mathewson, 81 Vt. 173, 69 Atl. 646, 18 L. R. A. 300–311 et seq.

In this case, however, there are other acts and circumstances worthy of consideration. The plaintiff in his complaint charges the defendant with unchastity and adultery, but introduces evidence of most trivial incidents to substantiate the charges, such as the incident of December 4th–5th, when the co-respondent in the complaint called on the defendant in the presence of the plaintiff, and not in his absence, as charged in the complaint. In addition to the charge of adultery, made on such trivial incidents or evidence, there is ample evidence in the case showing a course of general bad conduct and ill treatment by the plaintiff toward the defendant, and that ill will has existed between the plaintiff and the defendant for a considerable length of time, for the reason that the defendant would not supply the plaintiff more generously with her hard-made earnings. These matters and others disclosed by the evidence, coupled with the instance of December 1st, when it is clearly shown that the plaintiff went home, and, on the refusal of defendant to give him $500, treated her in a most shameful way, breaking up and knocking down the

stove, etc., show cruel and inhuman treatment by the plaintiff toward the defendant under section 1299, as defined and interpreted by the courts, and entitle the defendant to the divorce prayed for in her cross-complaint. A decree may be entered in accordance with this opinion, and dissolving the restraining order heretofore made and entered herein.