## KAMP v. KAMP*
(No. 1322; April 5, 1927; 254 Pac. 689.)

EVIDENCE—COMPETENCY OF LETTERS—APPEAL AND ERROR — JUDGMENT ON CONFLICTING EVIDENCE—DIVORCE—INDIGNITIES.

1. Where there were not enough parts of letter produced to make it sufficiently complete to fairly reflect ideas of writer, such parts of letter were properly excluded.

2. In divorce action, letters which defendant sought to introduce, and which she claimed plaintiff had received from women, *held* properly excluded, where it was not established that plaintiff received letters or acquiesced in views expressed therein.

3. Where evidence in divorce case was conflicting, lower court's judgment based thereon could not be disturbed on appeal.

4. Where wife had made unfounded charges of unfaithfulness against husband over long period of time to such an extent as to interfere with his practice as physician and his social relations, and to disturb his peace of mind, divorce *held* properly granted to husband on ground of indignities.

*See headnotes: (1,2) 22 CJ p. 305 n. 2, 6; p. 905 n. 68 New; p. 909 n. 5. (3) 4 CJ p. 883 n. 33. (4) 19 CJ p. 52 n. 69.

APPEAL from District Court, Natrona County; BRYANT S. CROMER, Judge.

Divorce action by Joseph C. Kamp against Carolyn S. Kamp. From a judgment for plaintiff, defendant appeals.

*B. G. Westover, L. H. Sennett,* and *C. E. Geiger,* for appellant.

Plaintiff prescribed morphine for defendant and cannot complain that she is an addict; Wilson v. Wilson, 12 L. R. A. 524; Shellenberger v. Ranson, 25 L. R. A. 564. Divorce cannot be predicated on declarations, confessions, admissions or by collusion of the parties; 5013 C. S.; Lundy v. Lundy, (Ariz.) 202 P. 809; Reubelmann v Reubelmann, (Idaho.) 220 P. 404; Andrews v. Andrews, 120 Cal. 184; 19 C. J. 133; 3 Wigmore on Evidence, 2067; Piatt v. Piatt, 32 Idaho 407; 4992 C. S.; Mc Millan v. Mc Millan, (Wash.) 193 P. 673; Pease v. Pease, (Nev.) 217 P. 239; Crumbley v. Crumbley, (Ore.) 186 P. 423; 19 C. J. 93, and cases in note; Redington v. Redington, (Colo.) 29 P. 811; Carmichael v. Carmichael, (Ore.) 211 P. 916; Tillison v. Tillison, (Vt.) 22 A. 531. Reformation of a drug addict between time of separation and bringing of divorce, based on such habit, will defeat proceedings; Smithson v. Smithson, 74 So. 149. It was error to exclude letters received by plaintiff; Austin v. Long, (Ga.) 57 S. E. 964. Letters showing improper relations are admissible; Purinton v. Purinton, 101 Me. 250; Bizer v. Bizer, (Ia.) 81 N. W. 465. Divorce would not be granted to subserve the interest of society; McMillan v. McMillan,

supra; Colvin v. Colvin, (Wash.) 46 P. 1029. Evidence, if admissible for any reason, should be admitted; Borkheim v. Borkheim, (Cal.) 223 P. 429; Coney v. Glynn, (Cal.) 106 P. 506.

*Nichols & Sterritt,* and *E. E. Enterline,* for respondent.

It is impossible to determine what appellant's contentions are from an examination of her brief, which has not been prepared in accordance with Rule 14 of this court; the appeal should be dismissed for violation of the rule; Boswell, Admr. v. Bliler, 9 Wyo, 277; Horn v. State, 12 Wyo. 80; Phillips v. Brill, 15 Wyo. 521; Riordan v. Horton, 16 Wyo. 363; Ry. Co. v. Lampman, 18 Wyo. 97; Pearce v. Holm, 23 Wyo. 417; Richie v. State, 28 Wyo. 117; Wood v. Stevenson, 30 Wyo. 171; Sayles v. Wilson, (Wyo.) 222 P. 1020. The question of cruelty was decided upon conflicting evidence, which involved defendant's use of morphine; the court found upon all of the issues in favor of plaintiff; the rules of evidence contended for, in relation to the introduction of letters, do not apply to the facts in the present case; the Bogardus letter was properly excluded; 10 R. C. L. Sec. 351, p. 1147; Jones Comm. on Evidence, Vol. 2, Sec. 269, p. 493; Comm. v. Eastman, 48 Am. Dec. 596. The divorce was not granted to serve the interests of society, and there is nothing in the record to suggest that it was; the divorce is amply supported by the evidence; Schirmer v. Schirmer, (Wash.) 145 P. 980; Ferraris v. Ferraris, 211 P. 470; Wespe v. Wespe, 216 P. 814; Van Kamp v. Van Kamp, 199 P. 885; Heiser v. Heiser, (Wash.) 220 P. 761. The fact that both parties contributed to the cause of disagreements, and are guilty of cruel conduct toward each other, will not defeat a divorce action; Swanda v. Swanda, (Okla.) 232 P. 62. Where evidence is conflicting, findings based thereon will not be disturbed; Ketchum v. Davis, 3 Wyo. 164; Riordan v. Horton, 16 Wyo. 363; Hunt v. City, 26 Wyo. 160; McFadden v. French, 29 Wyo. 401. If there

is evidence to support the findings, the court will not review the facts; Huber v. Bank, (Wyo.) 234 P. 31; Wettlin v. Jones, (Wyo.) 234 P. 515; Edwards v. Willson, (Wyo.) 219 P. 233. Plaintiff's motion for dismissal of the appeal should be granted.

Before Blume, Chief Justice, Brown, District Judge, and Riner, District Judge.

Brown, District Judge.

This is an action for divorce. Plaintiff and defendant were married at Manhattan, Kansas, in 1904. They are both physicians, educated, intelligent, and stand high socially in Casper, where they have resided for the past ten years. The plaintiff, J. C. Kamp, has been a practicing physician during all of the time he has resided in this state. The defendant, Carolyn Kamp, has not practiced medicine in this state. They have no children. Plaintiff charges in his petition that for a period of ten years defendant has been a habitual user of narcotics; that while under the influence of narcotics, defendant tried to kill him; that for a period of ten years, she has continually, wrongfully accused him of undue familiarity with his nurses, female patients and women friends, accusing them of being immoral and prostitutes; that on numerous occasions she had quarreled with plaintiff's female patients, causing him to lose them; that the conduct and acts of the defendant had caused plaintiff grievous mental pain and suffering, and was interfering and injuring him in his business. Defendant, in her answer, denied all of these allegations of wrong doing on her part. In her cross petition, she charges that for a period of ten years he, on numerous occasions, had called her a dope fiend and accused her of being immoral and unfaithful; that in 1920, in connivance with one Ray Cook, he had caused an insanity charge to be filed against her; that more than ten years ago, when defendant was ill and suffering from neuritis, the plaintiff purposely and with the knowledge

that such treatment would subject defendant to the influence of drugs, prescribed and administered to the defendant for a long period of time large quantities of morphine; that he possessed an uncontrollable temper and without cause frequently abused and insulted defendant with vile and profane language. She also charged that for a number of years he had and maintained improper associations with other women; that in public and private, in the presence of the defendant, he had given such attention to other women as to humiliate and degrade her; that on numerous occasions he had boasted to her of the fact that numerous other women had become infatuated about him. She charged that he had carried on improper correspondence with other women, and that in 1920, without just cause, plaintiff had willfully deserted defendant. She prayed for separate maintenance.

At the conclusion of the trial, the court found in favor of the plaintiff on the charge of indignities, and rendered judgment granting him a divorce. This decree included a property settlement which is not questioned here and needs no further mention. Defendant brings the case here on direct appeal.

The evidence is long. It is the usual contested divorce record. Both parties are at fault. There are charges and counter charges. Each must have known that such conduct has only one ending—the divorce court. While there were minor charges, most of the record is taken up with his charge against her of morphinism, her counter charge that he was responsible for her contracting the habit, and her charge of his misconduct with other women. Both signally failed in establishing the charge concerning the drug habit. It is true that she contracted the morphine habit and for ten years was a constant excessive user of it, yet he prescribed it and wrote all of the requisitions on which it was obtained. She was also a physician and knew as well as he the dangers of its use, yet she insisted on using it. She testified that it was the

only drug that would alleviate to some extent her suffering from neuritis. While he wrote and signed the requisitions on which the drug was obtained, it was always delivered direct to her. She called at the drug store and obtained it or it was delivered by the drug clerk direct to her at her home. She always administered it and was free to determine the amount of the dose and how often it should be taken. It is disappointing that these parties, both knowing the terrible effect upon the human body of this drug, permitted and continued its use until the druggist finally lodged an insanity charge against her. The lower court found against both plaintiff and defendant on their respective charges of morphinism.

Much time was taken up with the charge of his relations with other women. That she repeatedly charged him with undue familiarity with other women there is no dispute. She brings the charge into court in her answer and cross petition. The question for the court to determine was whether or not it was true. If continuously, wrongfully made over a long period of time to such an extent as to interfere with his business and social relations, and destroy his peace of mind, it would amount to an indignity under our statute. Rose v. Rose, 129 Mo. App. 175; 107 S. W. 1089; Crow v. Crow, 29 Ore. 392, 45 Pac. 761. Much time is taken in her testimony with this phase of the case. She testified to an almost continuous undue friendliness and intimacy with many women during their entire residence in Casper. She claims that he constantly had many women in his life. Except in the case of his nurse, who was also his office manager, this whole testimony stands uncorroborated. There is some corroboration of her charge of undue friendliness towards this office manager and nurse. This corroboration in the main consists of little facts and circumstances that, without her charge, would appear innocent in themselves. For instance, she says that they took a trip to Thermopolis together. It appears, when all of

the evidence is considered, that they did not go together or come home together. Incidentally they were at Thermopolis at the same time and in the public swimming pool at the same time. Another time she testified that they attended a social event in Casper together. It appears from all the evidence that they did not attend together; both happened to be at the same social gathering. The more serious charges against the husband and this nurse are pretty well explained and emphatically denied. The most that can be said of the testimony on all of these charges is that it creates some suspicion. The lower court found in favor of the plaintiff on these charges, on the ground of indignities.

An effort was made during the trial to introduce some scraps of a letter claimed to have been written by the plaintiff to some of these women. The court excluded the offer for the reason that there were not enough of the parts of the letter produced to show its meaning. We have examined the exhibit and think the ruling was correct. Parts of a writing which are not sufficiently complete to fairly reflect the ideas of the writer, should not be introduced in evidence. Several small pieces of letters, found in plaintiff's waste basket in his office, claimed to have been received by him from some of these women, were pasted together and offered in evidence. Defendant complains of the court's ruling excluding them. No sufficient foundation was laid for their introduction. It is not certain that plaintiff ever received them. When examined with reference to them—and this is the only testimony on this point—he said he did not remember. He might have received them. If he did he tore them up and threw them in the waste paper basket, as he·was not interested in them. Furthermore, it was not shown, if he did receive them, that he was in accord with the views and sentiments expressed in them. The evidence would indicate the contrary. When it is sought to bind a party by the contents of a letter claimed to have been received

by him, we understand the rule to be that it is necessary to establish the receipt of the letter by him and some act or conduct on his part showing his acquiescence therein. 22 C. J. 305. The letters were properly excluded.

While courts do not look upon an unfounded charge of unfaithfulness made by the wife against the husband as serious as when made by the husband against the wife, we think that this accusation, made over a long period of time and to such an extent as to interfere with his business and social relations and disturb his peace of mind, may amount to an indignity under our statute. Rose v. Rose, supra.

We have gone into the evidence thus far for the purpose of showing that it is conflicting. There are other charges and counter charges that we have not mentioned. We have carefully read the record, and read and reread the fine delineation of the evidence in appellant's brief. We are satisfied that minds might well differ in the conclusion reached. We might reach a different conclusion than that of the lower court from a reading of the cold record before us. We think the rule that the judgment of the lower court will not be disturbed in this court when based on conflicting evidence, is particularly applicable in this case. The appearance of the witness would go far towards establishing or refuting charges of this nature. Were they frank or reticent, fair or unfair, honest or apparently dishonest, are questions for the lower court.

If by our fiat we could place the parties where they would live together in peace and harmony, it would be done. We cannot do this. They had not lived together for four years when the case was tried. We think, regardless of our decision, they would never live together again. We may not take the view of the moralist. Ours must necessarily be the cold, critical view of the law. This home has been destroyed by the acts of the parties. The objects and aims of matrimony have been defeated by the acts of the parties themselves. It only remains for

the court to apply the law to what the parties have already done.  No one will be affected by this decree but the parties themselves and society.  We cannot say from the record before us that the District Court was wrong in holding that the best interests of society now requires that this marriage be terminated.  Heiser v. Heiser, 127 Wash. 186, 220 Pac. 762; Swanda v. Swanda, 105 Okl. 160, 232 Pac. 62.

It follows that the judgment of the District Court should be affirmed, and it is so ordered.

*Affirmed.*

BLUME, C. J., and RINER, District Judge, concur.